Take your time in getting set up. I'll just go ahead and call the case. Our last case today is number 22-13669 Maria Eugenia Blanco v. Anand Adrian Samuel Terol. Mr. Zaydel whenever on behalf of the appellant I will be splitting my time with Mrs. Poe from the Department of Labor. Ms. Blanco asked the court to reverse summary judgment entered against her based on the DLL's 2013 final rule. Ms. Blanco was a shift worker. She came at night or during the evening to night hours to babysit and to watch over the appellee's children. She was hired. She came at the beginning of her shift with her overnight bag. She left at the end of her shift with the overnight bag, and she had no key to the appellee's residence. She was a shift worker, and the district court found in spite of the fact that she didn't live in with the appellees that she was nevertheless a resided, and it was this work resided that caused or spawned the controversy in this case and the appeal that we're arguing today. Can I ask you just a broad overall question? I'm gonna ask Ms. Poe the same question and Mr. Butler too. Everybody refers to this final rule, but the majority of the stuff that everybody's relying on is not part of the rule. It's the preamble, right? Correct. So it's not codified. It's not. I know that it's issued and we look at it and all that, but it's not the part that everybody's fighting about and quoting is not the rule. It's the preamble to the rule, right? Bingo. Okay. Got it. Exactly. And that's another point. I mean, this isn't a CFR. This is not a regulation. This is the DOL trying to clarify questions from different groups, at least as far as this appeal is concerned is what constitutes a live-in worker. In order for a live-in worker to give up their rights to overtime pay, they have to get some benefit in addition to just having work. All of the regulations that I've been able to find, especially the 785.23, et cetera, et cetera, that is a minimum. The live-in worker must enjoy some periods of time of solace to herself that she enjoys completely free of her work duties. Many times this exemption includes a room or a separate room for the worker to enjoy as well so that rent is in effect paid for the worker by the employing family. Now the district court literally had to, for the lack of a better phrase, bend over backwards to try to squeeze Ms. Blanco into this live-in exemption when she did not live with this family. Even the final rule itself, if we just take the language of the final rule and the preamble, the major effect of the final rule is that more domestic service workers will be protected by the FLSA's minimum wage overtime recordkeeping requirements. This order just flies in the face of that general purpose of the rule if we're only to consider this rule and ignore decades of the DOL and the CFRs requiring many, many different things that Ms. Blanco did not enjoy in order to be exempt. For example, 783.23 of the CFR says that for a live-in worker, and I quote part of the language, is not considered working all the time that he or she is on the premises. Well, Ms. Blanco was, and so it's clear that these other regulations require at a minimum some free time. Ms. Blanco was always with the kids and the defendants, the appellees had a lot of kids. They had four kids during the relevant time period. Ms. Blanco slept in a room with all four for over a year of the two plus year period of time that she's claiming overtime until they moved to another house where she only slept with the two youngest girls. But is your contention that you're entitled to summary judgment or that the issue should be resolved by a jury? No, we are asking this court to A, find that she's not exempt as a live-in employee, that she did not reside with the employers, and number two, to find that they were employers even though they disavowed it and said they weren't. The facts are clear that Ms. Blanco was economically dependent on them and they controlled her through a group chat with all the nannies, etc. I'm going to give over the rest to Ms. Poe because my time is up. All right, thank you very much. Before you do that, because you're Ms. Blanco's lawyer, what about this thing that the district court uses a lot about that she slept there and she admitted she slept there and that he treats it as a judicial admission. I don't know whether it is or not, but that seemed, it seemed to me without all of that, it would be a fact issue whether she's sleeping or not sleeping. She says she was, was never sleeping, it was half awake. Parents said no, she didn't, they have their story, and it seems to be a fact issue about that, but the district court seemed to get around that by saying it was a judicial admission. And I just, before we get into any law here, I just got to hear your response about whether that's correct, and if it's not correct, why it's not correct. Okay, well if this court decides that. Forget about all the law, I'm just talking about a record question here. Okay. You went in and said she never slept, she was a shift worker, she was on duty the whole time. The district court made a big focus about, forget about that working and sleeping 120 hours, I agree with that, it's all in a preamble, forget about all that. This is not the purpose of the question. It's just, do we have a record that tells us whether she was working the whole time she was there, or was she sleeping for whatever time she was sleeping when we count up the hours here? Okay Judge. Or do we have a fact issue, or what do we have? Okay, so for that particular matter, Ms. Blanco testified at her deposition that she was sleeping in alert mode. Okay, I mean she was with four of the little girls for most, for a lot of the time. Right, and then with two youngest. And then the two youngest, so she slept basically with one eye open. Okay, now she made different references in her deposition as to what she did at night, one of the girls that the parents let them watch horror movies. I know what the evidence is, and then they say that room was next door, they never heard her, they couldn't wake her up sometimes, she'd bang on the door, she'd be sound asleep. So I'm saying, is there a fact issue about this, and is the judge right? Didn't the judge rely a lot on the admissions that she was sleeping, and he used that admission and the pleadings to say that? Well, he did. He said that because I represented at a discovery hearing, that Ms. Blanco was hired. Four different pleadings, he said that you did that. So what is the status of the record? The judge treated it as a judicial, as an admission, right? Right. That she was sleeping. Right, and my point is an attorney cannot undo what his client said in a prior deposition as to what she did. So do you say it's a fact issue, or you say it's undisputed she was not sleeping? I'm just trying to understand about the sleeping portion here. What is it? I say that there is, on that, arguably, looking at it in the light most favorable to the appellees, there would be a factual issue as to whether she was sleeping, because that depends on Ms. Blanco's credibility. But I also say that an attorney cannot undo what his client said, I mean, for the lack of a better word. You basically say it's a fact issue, and the district court got it wrong with saying it was... At a minimum. At a minimum, there's a factual issue. But I'm saying, we're asking the panel, don't even rely on that factual issue, because this is a legal issue. She cannot be exempt under a live-in statute when she did not reside there. I mean, by a dictionary definition, by the DOL's definition, by just a common sense definition, she didn't reside there. And the 2013 rule says it, the examples in the rule itself, contemplate an employee who checks in Monday morning and leaves late Friday afternoon. And the district court just sidestepped that, turned a blind eye to it altogether. So that laser focus latching on to two sentences in this preamble to fly in the face of DOL regulations and the CFRs that proceeded for decades, we just think there's a solid basis to find the exemption does not apply as a matter of law, and she was their employee based on this record. There's no way... I have no indulgence on that. We'll go to the DOL. Okay. Thank you, Mrs. Eidel. Ms. Poe. Caitlin Poe for the Department of Amicus. Plaintiff was a night shift worker. She did not reside at the defendant's home within the ordinary meaning of that term, nor under the limit exemption to apply that the worker actually lived there either permanently or over the course of a work week. The district... What does an extended period of time mean to you or to the department? The work week of at least a five-day work week and that five days or nights language in the preamble to the 2013 final rule reflects this. It's talking about at least a work week of five days where you work and then you sleep on the premises four nights, or as is common in industry and other domestic service employment, you work five nights and then you sleep four days. It's contemplating residing there over the course of the work week. And that's what that language in the preamble was reflecting that the district court misconstrued. Similarly, the working and sleeping language contemplates a worker working and then sleeping, not doing them both at the even if she was fast asleep. The regulation at 29 CFR 785.21 reflects that for shifts of less than 24 hours, as is undisputed here, sleeping while on duty when you're not otherwise busy is working time. So plaintiff... The record is... There's no question of fact that the plaintiff was working at all times while on defendant's property. She was always on duty. Had the district court considered the text of the statute and looked to the ordinary meaning of the term reside? Had the district court looked to the department's regulations not only at 29 CFR... Tell us exactly what regulation you want us to look to and whether you want us to look to the final rule or not. And if so, do you want us to look to the preamble or just to what? So what exactly do you want us to consider? The regulation controlling here is 29 CFR 552.102 that governs the living exemption. 552... 522... 552.102 that cross-references to 29 CFR 785.23. Both of those regulations provide a helpful picture of what a true living scenario looks like. Indeed, the principle or interpretation that under the exemption, a worker can reside for extended periods of time for purposes of the exemption itself comes from 29 CFR 785.23. So that regulation is relevant to the inquiry here, as is the department's guidance issued under both regulations. The preamble to the 2013 final rule we agree is helpful, relevant guidance, but it is not a regulation in the way that the district court appears to have treated it as such. That preamble discussion was in the 2013 final rule that was issued to address, you know, developments in the home care industry. It made certain changes to the domestic service employment regulations, but it did not propose changes to the definition of reside. And the preamble was very clear that DOL was simply reiterating and would continue to apply its longstanding definition of which requires that the employee actually live there either permanently or over the course of the work week. And that's what that language in the preamble is intended to reflect. And there's examples in there that bear this out, but the district court just didn't engage with. Maybe you can help me with this, but the very first regulation you mentioned seems to me to be not helpful at all. It's sort of tautological, right? It says domestic 552.1028. I understand the 785.23, but this one doesn't do anything for me. It says domestic service employees who reside in the household where they are employed are entitled to the same minimum wage as domestic service employees who work during the day. However, you know, section 213 of the act provides an exception from the act's overtime requirement for domestic service employees who reside in the household where employed. And it tells you nothing about where residing in the household means. Am I missing something from that regulation? No, you're not missing anything except it does cross-refer to 785.23 in the regulation itself. It points the reader there and it's 785.23, which includes the discussion of residing for permanently or extended periods of time. I think you're right that that one is more helpful, but this one doesn't, aside from the reference, it doesn't tell me anything about what it means to reside in a household. We're starting there because that's the regulation that sets out the exemption for workers who do, in fact, reside. It also is helpful in that it describes, again, a true live-in scenario. It contemplates a worker having both on and off-duty time on the premises and the choice of whether to stay or go to spend that off-duty time on the premises and do things like eat, sleep while off-duty, entertain, and engage in other private pursuits. So it's at least a helpful picture of what a true live-in scenario looks like. Likewise, the cross-reference to 785.23 is important, not only to the compensability of hours worked issue that's also addressed in 552.102, but to the threshold question of whether a worker resides for purposes of the exemption. So just to be clear, you're basically saying it's a binary choice. You reside in a household. The difference between whether you're residing in and whether you qualify as residing in versus shift worker, at least in part, is you look to some of the things, some of the indices that you have where the regulation specifies at 502, 552.102A about other periods of complete freedom from all duties when the employee may either leave their right. So I just want to make sure I'm understanding the argument. Basically, it's sort of a binary choice. You fall into one category or another. You either reside in or you don't reside in. Yes. For purposes of the exemption, you must live there. If you don't reside, is what the statute says. Okay. And in order to determine whether somebody resides in, some of the things we look to are the things that are mentioned in 552.102A. Exactly. Okay. Got it. Thank you. Okay. But let me follow up on that then, because it says one of the things you look to is whether by agreement between themselves, the amount of sleeping time is excluded from the hours worked. So you can't exclude sleeping time by agreement. That is a different requirement. Well, it's right here in A. Correct. In determining the amount of hours worked, the employee and employer may exclude by agreement the amount of sleeping time, periods of complete freedom, and time their way from the premises on personal pursuits. Yes. That's with respect to whether you can exclude sleep time from compensable hours worked for a worker who resides there. The language in 552.102 about the considerations to whether a worker resides there, it's a helpful picture. It's an example of a true living scenario. These are the things you would expect. I'm sorry to interrupt, but when I look at it, it says the amount of sleeping time, meal time, and other periods of complete freedom from all duties. So other periods of complete freedom from all duties, does that modify sleeping time? In other words, in order to count as sleeping time under this, do you have to have complete freedom from all duties? Or can sleeping time mean that you still have to, you know, you still might have some responsibilities and you might be able to be awakened in the middle of them? With respect to the exemption here, we don't need to consider whether the employer would have been able to exclude sleep time for a live-in worker. There are different rules for when sleep time may be excluded from hours worked for different types of employees and different lengths of shifts. The regulation that's relevant here, because her shifts were all of less than 24 hours, is 785.21. And that means all of her time was compensable time. So there's no sleep time as contemplated here in the regulation that's relevant. Instead, you know, that language in 552.102 is helpful in giving an example of what it looks like for a true, you know, live-in worker. But the interpretation of reside permanently or for extended periods of time, that's found in 785.23. And then in departmental guidance issued over decades, illustrating what that looks like. And again, it's a worker living, sleeping, working on the premises over the course of the work week. So starting 9 a.m. Monday, staying there, living there, working there, sleeping there through 5 p.m. Friday. It does not contemplate, you know, completing five defined shifts during which the worker may sleep, which is compensable time. So 552.102A and 785.23, in their discussion of the on and off-duty time, that is more tailored. Its direct purpose is about the secondary purpose of giving us a helpful picture of what a true live-in scenario looks like. I want to go back to Judge Jordan's original question about where do we find the definition of resides and what regulations do we look at for that? And you've told us 552.102, right? That is where we find the exemption. That regulation does not define resides. All right. And so then is 785.23 the one that helps us with resides? It includes reside permanently or for extended periods of time. Okay. Well, we know it wasn't permanent. Correct. So we're dealing with extended periods. Is that a definitional section for extended periods? No. And that's where we turn to DOL's guidance issued over the years, including the 1981 opinion letter, the 1988 enforcement policy reiterates those principles. So we don't have a definition really for reside or for extended periods, a per se definition. We just have guidance. Correct. All right. Let's go back to extended periods. Does it matter if it's matter? It doesn't matter. No, it does not. Okay. So I don't need to worry that it's here. I think it was Sunday through Thursday. I believe it was. Or was it Friday? Friday. Okay. Whatever. I don't need to worry of the days. That's not it. No. Okay. So if I go to 785.23, resides on the premises and are for extended periods is not considered as working all the time is on the premises. Okay. But here you're saying we should consider her as working the whole time she was on the premises. Yes. She does not fit within the live-in worker kind of contemplated within that language. She was working at all times. It's undisputed that she, all her time there is on duty time, even while sleeping, that is working time. Okay. This says for extended periods of time are not considering as working all the time. Ordinarily he or he or she may engage in enough time for eating, sleeping, and other periods of complete freedom. So we get that other periods of complete freedom again. And again, that leaves the premises. But you're saying that, so this goes back to my sleep question. So does this case turn on whether her sleep, let's say she had slept in another room in this house, downstairs, nowhere near the children. Would the outcome be different here? No. Because again, she was sleeping there as part of her duty time. That was the expectation that she would, that was what she was paid to do, was to be there overnight, respond to the children. And if not busy with the children, she could sleep. Of course, the provision of a private room is another element of what you would expect of a true live-in scenario. Let me correct this. So even if she was in another room, not in the room, your position would be the record supports that that was still part of her duties in this case. Okay. And is there a factual issue about that? Or is it just you're saying, why is there not a factual issue? So when they testify whether right or wrong, I don't know that she did sleep soundly. She wasn't expected to get up. She didn't get up. I actually got up with them sometimes, et cetera, et cetera. Why is there not a fact question about that? It's belied by the other undisputed facts in the record, which demonstrate her job was to show up at her appointed shift time, stay with the children, stay in the room with them and attend to them. She was on duty. That's not disputed that she was there for her duty period. Whether, you know, she performed all her duties on any given night does not change the fact that she was there on duty, on shift. On duty period. So you even except like he did, okay, we'll accept she was sleeping soundly and getting rest, good rest. You're saying it doesn't matter? It doesn't matter. No. Okay. Sleeping. And I'm going to get that from these two regulations. You just 785.23 and 552.102. The sleep time principle is in 785.21 regarding sleep on shifts of less than 24 hours. And that is cited in our brief. Does it also come from the notion that, quote, other periods of complete freedom from all duties when he may leave the premises for purposes of his own, which is in more, I mean, that's from 785.23, but also in the definition of, I guess, live in or reside in. But I mean, is the idea that there was not complete freedom from all duties when she was sleeping because she was on call? Is that the notion? Yes. That's the general idea is that the sleeping time contemplated in the regulation and in the department's guidance, including the on-duty working time, working and sleeping at different times, not a shift worker who's allowed to sleep while on shift when they're not busy. I mean, in that situation, she's no different under your articulation than a home healthcare worker who is staying overnight with a patient to make sure that nothing goes wrong or to make sure that the patient's needs are taken care of if and when they arise. Absolutely. And that's our concern with the district court's approach here. If affirmed by this court, it could deprive not only plaintiff and other nannies, but other domestic service employees, including home health aides of the right to overtime, even though they're shift workers, they show up to work, they work, they leave. And if they're allowed to sleep while on duty, that does not convert them to a litman worker excluded from overtime or exempted from overtime. Okay. Thank you very much. All right. Thank you. How do I pronounce your last name? Mark Buehler for the parents, the appellee here in Good morning. Good morning. Uh, excuse me. I'm going to jump around and, uh, on some of these points, um, the plaintiff's work and sleep schedule very closely matches what the department of labor permits for live in workers. Um, the plaintiff, uh, Ms. Blanco put the children to bed, did a few chores. She slept on the premises, got the children ready for school in the morning after she woke up, made breakfast for herself after the children went to a school taken by another nanny. And, uh, and then she left the premises while the children were in school. The schedule parallels the examples, uh, of live in workers in numerous places. Does it though? I mean, in the examples that we're talking about, for example, in the preamble, we're talking about uninterrupted periods. The person comes to work and is, you know, and is there for uninterrupted periods from whether it's Sunday to Thursday, Monday to Friday, Tuesday to Saturday, whatever. They're not going home at points during the day, um, you know, and completely off call. They're, they're actually staying on the premises unless they're doing things for themselves, but they're not, they don't have a separate residence that they're going to for at least eight hours a day. I'm not sure I fully follow the question, but again, the schedule is been repeated in several different, uh, examples of agency guidance where we have, they show up in the evening, they, they go to sleep, they get up and do some more work and then they leave for the day. Uh, would you back again the following evening? And we've got that, you know, Mr. Buehler, is your position different if her hours were inverted? Uh, for example, assume day or night doesn't matter. I mean, it was assumed the same set of facts, except the children are younger and don't go to school and the parents work. And so instead of working from, um, 7 p.m. to 9 a.m., she works 9 a.m. to 7 p.m. and then goes home. Is she sleeping on the premises? She might. Say they're napping. They're napping. They're, you know, they're babies, one year old, one and a half year old, six month old, whatever. And parents need care while they work. And so she's got the shift from 7 o'clock in the morning to 9 p.m. at night, 12 hours. And then she goes home and sleeps, comes back the next day, 7 a.m., 9 o'clock at night. Yes, there are, there are moments during the day in my hypothetical, when the baby sleeps, she sleeps. I can answer your question. For purposes of the exemption, where, where the tasks occurred during the day do not matter. Now for sleep time exclusion purposes, which there is no sleep time exclusion issue in this case, then, uh, if she, the sleep has to be at night to be excluded. Why? Because there's a, there are a lot of, there are a lot of people who work night shifts and sleep during the day. I may have this wrong, but I believe that the sleep has to be during normal nighttime hours for the sleep time to be excluded. But again, that's not an issue. My question is why? Uh, there are a lot of people who work nighttime shifts and sleep during the day. I believe the regulations provide for that. Why? I'm not sure I can answer, but it's not an issue in this case since there are no sleep time exclusion issues. So if she, so if she worked the inverted schedule that I said and slept at times when the she's exempt. Oh no, we're still exempt. Sleep time exclusion exemption. You can have all kinds of sleep time exclusion problems. So you would say that an employee who works 7am to 9pm at night goes home to sleep, resides at the employer's residence. On your factual scenario, I don't believe that the employee would qualify because she doesn't sleep on the residence. She sleeps naps when the babies sleep. If somebody is on duty and nods off, you have a security guard who does that or you or something of that nature, or maybe a emergency room position. I don't think that counts. I'm really not, I can't point to any guidance, but that's not what we have, you know, but no, I want to, I want to go back to my question, if you don't mind. Sure. Ms. Blanco does the same thing, except she's got smaller kids who don't go to school and she works 7am to 9pm, goes home at night, every night, sleeps, comes back the next morning. And while she works at the home from 7am to 9pm, when the babies sleep every once in a while, she takes a nap too. Is she exempt? I would say, is there some minimum quantum of sleep that can be part of her, her shift that would, on which the exemption would turn? I would say not in any regulation. I can say this though. She is or is not exempt? What's that? So my, my Ms. Blanco, is she exempt or not exempt? If she got sleep on the premises and she was there for the purpose, and she was there for the purpose of sleeping. She had her pajamas. She wasn't there for the purpose of sleeping. Yes. She wasn't there for the purpose of sleeping. She's there for the purpose of taking care of the kids. Oh, I understand that. But, but, uh, if she gets any sleep, she's exempt. Two hours sleep was sufficient in 790, the second circuit decision. So, so the amount of sleep, no matter when it takes place is basically a proxy for the word resides. Cause the statute says resides. The statute does say reside. The regulation says resides it extended period of time. It defines it. It calls it a definition. And this is repeated over and over again in agency guidance that this is the, the, the D they use the D word, the definition of reside for extended periods of time. And yes, is there anything in the regulation that says there's a minimum quantum of sleep that you need for purposes of the exemption? No, no. Is that a good subject for an agency rulemaking perhaps? So if, okay. So my final one, my miss Blanco now is working 40 hours a week, 41 hours. Cause I gets her into overtime. So 41 hours a week and it's every day, nine to five, one day, nine to six, she sleeps an hour per day, takes a nap while the babies are sleeping. Does she reside for an extended period of time at the employer's residence? Normal nine to five. Most people in the United States work that shift and she sleeps, takes a nap when the babies sleep. Is she exempt? I would say without more facts, perhaps not, but if she has her pajamas and her slippers and she sleeps an hour and a half, two and a half hours and does this every day, she might be exempt. That's residence for your purposes. What's that? That's that constitutes residence for your purposes. Definition provided by the department of labor in the final rule. There is no definition. Yes. It says for an extended period, but the word residence is not defined and the term for extended period is not defined. Oh no, it is. It's in that final rule. All right. You tell me where there's a definition. Preamble expands upon it, but the preamble is not a rule. I call it the final rule. I'm referring to the preamble. Correct. Okay. Tell me where the word residence is defined in the preamble and tell me where for an extended period is defined in the preamble. It's cited over and over again in the brief and it's 607 or something, but they use the word defined in the preamble and it's a, they use the D word it's done several times in the preamble and that definition. It says on page 60,474. Right. One of the requirements is resides on his or her employer's premises on a quote permanent basis or for extended periods of time. Yes. But that doesn't tell me anything. Yeah. If you, this is not permanent. If you keep reading, it says extended period of time means keep reading the same paragraph. Employees who work and sleep on the employer's premises for five days a week, 120 hours or more are considered to reside on the employer's premises for extended period, periods of time. Correct. Under my hypotheticals, Ms. Blanca was under the 120. You're breathing. You'll find that it's less than 120 hours per week. Five consecutive days or nights is an extended period of time. That's correct. So they don't matter how many hours are worked. In fact, the word, regardless of the number of hours worked is stated not there, but in agency guidance that parrots that language. So, so, so all this depends on sleep. It does. And that is how the rule is defined. Now, can somebody say, perhaps we need a rulemaking and change this rule because I could see problems with it? That's a fair argument to make, but we can hold the Department of Labor to the position it takes in this preamble to the final rule and in its subsequent agency guidance, which basically says the same thing. But if we're looking at the preamble, it says employees who reside on the employer's premises, five consecutive days from 9 a.m. Monday to five until 5 p.m. Friday, sleeping four straight nights on the premises would be considered to reside. In this case, she's working during the nights, but she is going home during the day. It's the opposite. In other words, in the preamble, she is, or he is there for a continuous period of whatever it is, less than 120 hours. Here, we have 79 hours and they're punctuated by periods where she is not at the house. It doesn't seem to me that it qualifies under that. I don't see how that matches up. The examples provided in the preamble are not exclusive and they do not limit the definitions applied by the Department of Labor in the rule. There are other examples in the final rule and in other agency guidance, which I have identified. I was identifying when I started and I'll just list them. There's the university student in the final rule on 6492. There's fact sheet 79D, the example of Wendy. There's the 1988 enforcement policy. Slow down because you did say there's lots of guidance and I want to make sure I get what you're saying. Could you repeat yourself, Judge Hall? Can you start over with the guidance, the first section? I didn't get the first section. Yes, and some of it's in my brief, but on page 6492, we're dealing with a university student and he has a schedule similar to Ms. Blanco. Is this in the preamble? This is in the preamble. That's correct. There's the example of Wendy. In fact, she's 79D and she cuts out through the middle of the day. She's there to help out in the morning, there to help out in the night, and between the night and the morning, she sleeps. There's the 1988 enforcement policy. It's cited by the Department of Labor and they have an example of an employee who, again, does the same thing. Do you have a site for the 1988 enforcement policy? What is that? I do. It's cited in the Department of Labor's brief, but it's 1988 Westlaw 614199. Can you tell me that again, please? 1988 Westlaw? 614199. Then we have the Field Administrator's Bulletin 2016-1. It's attached to the, it's in the appendix. And we have another example of somebody who- Say that last one again. Field Administrator's Bulletin 2016-1. It's in the appendix, the plaintiff's appendix, tab D. And then we have Administrator's Interpretation 2014-1, note 22. And that's in the supplemental appendix. Again, we have each of these promulgations contain examples of workers who work in the morning, sleep in between, and leave the premises during the middle of the day. And the DOL, in all cases, refers to them as hit-in employees. So plaintiff's work schedule creates no overtime exemption problem. Now, as far as the fact that the plaintiff is required to be on the premises, that doesn't create an issue either. I mean, she's not allowed to stay on the premises between when she finishes her shift and when she starts the next shift. She can't stay there for the next eight hours or 10 hours, right? I don't know if that's true. I think she is there by herself for the very end of the shift. There's nobody there. And then the other nanny comes in and relieves her. Right. But is it in the record as to, like, if she wants to just hang out there all day long, is that in the record somewhere? Either way, no. But my understanding is that nobody was kicking her out. It's not in the record. And sometimes they did depart from the schedule. Does she have a key to the premises? She doesn't, right? No, but she testified that the place is never locked. She can't really come and go as she wants, I mean, if she doesn't have a key to the premises. She testified that the place is never locked. And it is never locked because they have a 24-hour operation. There's always somebody at the premises. All right. Let me ask you a question about these regulations, because I'm just trying to figure out how to, you know, read it as a comprehensive scheme. So the regulation at 29 CFR 552.102A talks about determining the number of hours worked by a live-in worker the employee and the employer may exclude by agreement between themselves, the amount of sleeping time, meal time, and other periods of complete freedom from all duties when the employee may either leave the premises or stay on the premises for purely personal pursuits, right? That's what it says. That's what it says. That is a sleep time exclusion issue. All right. And it's not present in this case. Okay. I understand that. But I think it can tell us something about what we're looking for when we're looking at residing in. Okay. I mean, if my question for you is, and if we go down to 29.75.23, that also uses similar language. Other periods of complete freedom from all, okay, enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. And so with the words other periods, the use of the term other doesn't suggest, or why doesn't it suggest that when we're talking about eating, sleeping, well, at least sleeping anyway for purposes of this case, that we are necessarily talking about it has to be a period of complete freedom from all duties when she may leave the premises for purposes of her own. Why is that not the case? Because 7.85.23 comes from part 7.85. 7.85 deals with hours worked and how you calculate them. The exemption comes from part 5.52 and- It's the same language in 5.52 as we just discussed. I mean, it's not- 5.52 is saying that these employees are exempt, but you still got to deal with minimum wage issues and paying them for the hours that they work. And then it says hours worked, more discussion about hours worked, more discussion about hours worked, even more discussion about hours worked. And then it cites part 7.85. But we're talking about, yes, it's trying to distinguish between what hours you have to pay them for versus what hours you don't. But the whole point is that the reason you have to figure that out is because they're residing there. And so why doesn't that, at least to some extent, inform the definition of reside in, right, reside in when we're talking about someone who's there for fewer than 120 hours? Because everything, and I mean everything written by the Department of Labor on this subject, proceeds from the premise that, you know, these are separate inquiries. Are you exempt? And is sleep time to be excluded? And oftentimes it's implicit, not always. This scenario is repeated over and over again. Bobby is a live-in employee. The employer has all these sleep time exclusion issues. Here, the DOL is going to explain how you resolve these sleep time exclusion issues. But Bobby's a live-in employee, you know, and this happens over and over again. And that's what I mean by implicit. Now, it's not always implicit. If you look at the field operations handbook, chapter 25, it says that, and I have the language here somewhere, it says regardless of whether they're exempt or not, you still got to pay attention to these sleep time issues. And then this was a brief that was filed by the Secretary of Labor in a case in 2008, which the Department of Labor cited in this case. And I looked at that brief and I found this in footnote nine. It says, and it's cited in my brief, it says, we don't even look at 785.23 unless the person is deemed to be residing in the premises, on the premises. So, clearly, the department views the two inquiries as separate. Are they exempt? Do we have sleep time exclusion issues? Or are ours worth being dealt with? That's certainly the operating premise in the second circuit's decision in sub nine. I'm confused. Are you saying we don't need to get to sleep time exclusions? We just need to decide whether she's exempt or not exempt? Is that what you're trying to tell us? Yes. Okay, so don't, don't get into any of this sleep time exclusion issues. But the, we should, is that what you're saying? Is that what you're saying? That's right. But she's exempt or she's not exempt. She's living or she's not living. And how do we decide that? You say, just look at what? The definition, the definition in the preamble, and which is recited in agency guidance over and over and over again. And, and the definition is basically, if she's sleeping and working on five consecutive nights. Sleep and work five consecutive nights. That's all we have to do. Sleep and work five consecutive nights. And now you're saying it doesn't matter whether the sleep is work or not. Suppose the sleep is not really sleep, it's work. Or does it matter? Okay. Sleep time, time that you're sleeping is not work time. In this, in this, in this context. And that goes. But let me ask you this though, because I want to make sure I understand. Let's say that one of the children starts crying, has to go to the bathroom and is scared, wants somebody to go with her. Does she have the choice to just say, you know what? Go ask her mom, I'm kind of tired. No, she is sleeping there with the, So doesn't that mean she's working? I mean, why is she not working if she's on call? She is. Because in this particular context, and this goes back to Skidmore itself, which dealt with this, this issue. You can require someone to be on the premises and you can exclude their time that they're spent sleeping from work time, unless they're called to duty. In which case, if they're called to duty for the time that they're on, on duty and called to duty during their sleep time, they have to be paid for that. But the employers here didn't exclude any of that sleep time from compensation. That's right. That's why we don't have a sleep time exclusion issue here because, and there's the other hoops you have to jump through too, to get sleep time excluded. But we didn't do that here. You just said she's residing because she sleeps and works there 120 hours or less than 120 hours. Five consecutive days or nights. Correct. But don't those examples talk about being at the employer's residence for a non-broken up period of time? Again, I would say that the... Like, for example, the one where you work less than 120 hours, it's five consecutive days. All time you're at the premises, regardless of any hours you're working, you are living at the employer's premise. Okay. Right? That's not what's happening here. The examples that you're referring to, which are in the same paragraph that we've been discussing, where we have the definition, they're not exclusive. They do not limit the definitions applied by the DOL in this rule and elsewhere. And there are other examples in the final rule and elsewhere, which I've discussed, where that isn't the case, but they are still living employees. And so I would look at administrative interpretation 2014-1, which makes clear that residing for an extended period of time means work and sleep in the household five consecutive days or nights, quote, regardless of the number of hours, unquote, at the home. That can't be right. That's what it says. I'm telling you, that can't be right. Because the hours at the home do matter. If not, they couldn't be a residence. Oh, no, I'm not sure I follow. Why is that? I mean, that is the definition that the agency provides. You have to be at a place for the place to be considered your residence, right? You have to work and sleep there, yes. Okay. So the number, the amount of time you spend there has to matter, right? But the example you just gave, the 2014 whatever, says that it doesn't matter the amount of hours you spend at the place. It says regardless of the number of hours. In other words, they start talking about 120 hours and then they say, and if it's less than 120 hours, then if you work and sleep in the household, you're there for an extended period of time regardless of the number of hours. Now, is there some implicit number of hours in there? Not from what I can read. There has to be. Extended period of time has to be, you think, is it more than 50% of a week? If I were to write the rule, what would I do? Yes. I'm asking you as an advocate. As an advocate, I can come up with a lot of scenarios which aren't relevant here, where we start pushing that line farther and farther and farther, much like you're doing. The rule does not, the agency guidance does not speak to that and maybe it should. It just doesn't. Okay. Thank you very much. We've taken you way over your time, but we appreciate the help. Mr. Zaito. Yes. What the district court did and what Mr. Buehler is suggesting is that working and sleeping is really tantamount to working while sleeping, and that's a quantum leap under these regulations. It's not. Working and sleeping is not working while sleeping. It makes no sense in light of decades of the DOL and the CFR regulations holding to the contrary. If we go back to the preamble again, nobody's mentioned that it is the department's intention to continue to apply its existing definition of live-in domestic service employees. They made it clear in the preamble they're not changing the definition of what a live-in worker is, and their intention was to give more rights to workers for overtime and minimum wage, et cetera, et cetera. The district court's order flies in the face of all of that. And like I started by saying, the district court really had to, for the lack of a better description, bend over backwards to fit Ms. Blanco's job into this very limited exception. I mean, even under the fair reading standard that the Supreme Court announced in Encino in 2018, this isn't fair. You can't call a shift worker a live-in domestic worker. That's not fair to anybody. But the district court insisted to do it anyway. Now, replying once again to Judge Hull, I've had a chance during the interim to look through my brief. If you look at the DOL field assistant bulletin number 2016-1, that speaks to that the employee defines sleep as being able to enjoy an uninterrupted night's sleep. And the regulation goes on to discuss that five hours is generally the benchmark that the DOL is looking to to determine whether somebody gets an uninterrupted night's sleep. And there's other opinions that say that can be broken up. But as long as there are five hours, cumulatively speaking, of uninterrupted night's sleep, that can qualify. But as Ms. Poe said, we're really not talking about that here because Ms. Blanco was on if she was sleeping at all based on her deposition testimony. So we are asking the court, and I filed this recently in response to supplemental authority that Mr. Buechler filed. Judge Rosenbaum authored the Thompson v. Regents Security Services case earlier this year. And we find it highly, highly relevant to the issues here. In Thompson, the issue was the term hourly rate or regular rate and how it was not defined under the DOL's guidance. This court looked to ordinary dictionary definitions and looked to the DOL because the DOL is the one that is best suited to determine these definitions and issues. As that opinion says in Thompson, that they found the DOL's power to persuade applicable as pursuant to the Skidmore decision because it preserves what the Supreme Court has said is the congressional purpose behind the FLSA's overtime provisions. And it's to spread employment by placing financial pressure on the employer through the overtime pay requirement. That is exactly what these employers have tried to sidestep in this case. These are Harvard Law graduates. Both of them were barred in New York. They were licensed attorneys. Both of them said repeatedly in the depositions, I don't know. I don't know. Mr. Sample says that he doesn't even know what law school means, even though he graduated from Harvard Law School. So, and Ms. Finch says she doesn't know what overtime is. So, their strategy for the case, at least based on my view, is to say, you know what? This is your case. Prove it. We're not going to prove it for you. But the problem is, this is an overtime exemption, and it is the employer's duty to prove that exemption. It is not Ms. Blanco's duty to disprove it. By them saying constantly in their depositions, and I urge the panel to review it, to review their testimony, they don't know. Even though Samuel was right in the room next to Blanco. I'm sure you have an answer for this, but I got to make sure I understand it. And this is in the preamble. It's right in that 120-hour workweek paragraph. It's got two sentences. Employees who reside on the premises five consecutive nights from 9 p.m. Monday until 9 a.m.  It doesn't get into when you're working. It doesn't get into when you're sleeping. It just says, if you're there five consecutive nights from 9 p.m. to 9 a.m., which he was, you reside there. And help me get around that. Well, it says Monday through Friday, or Monday. Well, the sentence above it, it says, so you would say it's Monday through Friday. Okay. It says, for example. But anyway, then right above it, it says, for example. And it doesn't have the Monday and Friday. Employees reside on the premises five consecutive days. Well, actually, that one says Monday until Friday would be residing in the premises. Right. And that's what you're saying. You ignore those because they say Monday through Friday. Yeah, that was for a reason. That wasn't just arbitrarily put in there by the DOL. I mean, they're contemplating an employee who lives at this premises. Monday through Friday during the week. Yeah, the whole time. Yeah, not coming and going and coming and going every day. No, it says 9 p.m. to 9 a.m. Yes, Monday through Friday. I think you're interpreting it to me. The 9 a.m. or p.m. where it starts is the Monday. The 9 p.m. or 9 a.m. when it finishes is the Friday. Yeah. It's not the sequential day, 9 a.m., 9 p.m. So you're reading that provision. Right. And it's 9 a.m. Okay. So they got to stay there the whole time. That's how you're getting there. Or at least have access, meaningful access to the place. And they can't do that without a key like Judge Rosenbaum's. So we thank you and ask you to rehearse on all grounds and enter judgment in Ms. Blanco's favor on all issues that were appealing. Thank you. All right. Thank you all very much. Been helpful. Well, we're at recess for today.